IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE GUARDIANSHIP & CONSERVATORSHIP OF MUELLER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE GUARDIANSHIP AND CONSERVATORSHIP OF LORINE MUELLER, A PROTECTED PERSON.

MARGO LOOP, GUARDIAN AND CONSERVATOR, APPELLEE,

V.

CHERYL MUELLER ET AL., APPELLANTS.


Filed January 31, 2017.    No. A-16-651.


Appeal from the County Court for Platte County: FRANK J. SKORUPA, Judge. Affirmed.

Clark J. Grant, of Grant & Grant, for appellants.

Brenda K. Smith and Heather S. Voegele, of Dvorak & Donovan Law Group, L.L.C., for appellee.


MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

INBODY, Judge.

## INTRODUCTION

Cheryl Mueller, Paul Mueller, and Samantha Mueller (the Muellers) appeal from an order of the Platte County Court in determining the Muellers did not have standing to object to Margo Loop's motion for authority to sell certain real estate and allowing Margo, as guardian and conservator of Lorine Mueller, to sell certain real estate belonging to Lorine.

## STATEMENT OF FACTS

Lorine is the majority shareholder of the corporation Mue-Cow Farms, Inc. Mue-Cow also owns a 17.56-acre property. In September 2014, Margo, as guardian and conservator of Lorine, sought the trial court's approval to sell the Mue-Cow property, in addition to a 15-acre tract of

- 1 -

property referred to as the Sandpit. The trial court authorized Margo to sell the Mue-Cow and Sandpit properties and Cheryl appealed the decision authorizing Margo to sell the Mue-Cow property to this court. We reversed the county court's order allowing Margo to sell the Mue-Cow property. Specifically, we determined it was error to authorize Margo to sell the Mue-Cow property absent circumstances establishing that it was in Lorine's best interest to do so because Lorine devised the Mue-Cow property to Cheryl in her will and because there was ample property in Lorine's estate to adequately support her without selling the Mue-Cow property.

Following this court's decision, in January 2016, Margo and the Muellers entered into a Settlement and Mutual Release Agreement. Specifically, the Agreement provides that the Muellers "shall waive (i) their rights as interested parties to file any further motions, objections, and filings in the Guardianship/Conservatorship Proceeding; and (ii) any further standing, upon execution of this Agreement, in the Guardianship/Conservatorship Proceeding." The Muellers also agreed to vacate the Mue-Cow property prior to April 1, 2016. Cheryl transferred any stock she owned in Mue-Cow to Lorine. In return, the Agreement provided for the dismissal of various pending litigation by Margo or Mue-Cow against the Muellers and that the Muellers would take the cattle and any other livestock from the Mue-Cow property with them.

In April 2016, Margo filed a motion for authority to act, again seeking approval to sell the Mue-Cow property. The Muellers filed an objection to the motion and a hearing was held on the motion. At the first hearing regarding the motion for authority to act, Margo contended that the Muellers lacked standing to contest the motion because of the Agreement. The trial court ordered the parties to submit briefs regarding whether the Muellers had standing to object to the motion.

Upon review of the briefs, the trial court held another hearing and determined that the Muellers waived their rights as interested parties. The trial court indicated in its order that Cheryl was not an interested party pursuant to Neb. Rev. Stat. § 30-2601(10) because she was not a "child[], spouse[], [or a] person[] who would be the heir[] if the ward or person alleged to be incapacitated died without leaving a valid will[.]" The court also determined that although Paul and Samantha might be interested parties qualifying under § 30-2601(10), they entered into the Agreement waiving their rights as interested parties.

Also at the hearing, the trial court heard testimony from Margo that Lorine's income consists of $250 a month for renting a cabin and $606 a month for Social Security. Margo also testified that the Mue-Cow real estate does not produce income and that it is not capable of producing any income without a lot of expense. Margo claimed that Lorine was living paycheck-to-paycheck. Specifically, Margo indicated that Lorine needs about $75,000 annually to pay for her care; that Lorine had $181,353 in her checking account; that Margo's application for withdrawal of funds was approved by the court for $118,650; and that the approval would take down the amount to about $62,956. Margo also indicated that Lorine would get an installment payment for sold land in three installments: about $59,000 in December 2016; and around $182,000 in March 2017 and March 2018. Margo stated that the remainder of the available property to sell was miscellaneous personal property. Margo also testified that she has received three offers to purchase the Mue-Cow and Sandpit properties without formally listing the property, the highest being $255,000 for both properties. Margo indicated that all three purchasers wanted to buy the two properties together and that she has not had any interested purchasers approach her

in buying the Sandpit or Mue-Cow properties separately. However, Margo did state that at one time there was an offer to buy the Sandpit property for $85,000, but that the new offers are substantially more when the two properties are combined. Margo also stated that the condition of the Mue-Cow property was "disastrous," as 10 "roll-offs" were filled to clean the property and that there was still a significant amount of cleanup needed, as there were two illegal dumpsites on the property. Additionally, Margo stated the Mue-Cow property included expenses for electricity, a security system, and real estate taxes. Margo also acknowledged that if Mue-Cow was sold, that the net proceeds would need to be held separately for Cheryl pursuant to Lorine's will.

Margo's counsel offered an exhibit of the affidavit of Will Evans, a certified public accountant who assisted in preparing the tax returns of Mue-Cow. Evans determined that Lorine has been paying for Mue-Cow's expenses in her individual capacity. Evans also stated that he has not prepared a tax return for Mue-Cow because of its expenses being paid in Lorine's individual capacity and because Mue-Cow did not practice adequate recordkeeping. Evans also indicated that upon his review of Mue-Cow's records, it should be "dissolved because it is not a properly functioning entity due to its lack of recordkeeping and failure to operate financially as an entity separate and apart from Lorine."

Margo's counsel also offered the affidavit of Shane Borer as an exhibit. Borer's affidavit indicated he is a plumber and assists in cleaning up properties. The affidavit states that he assisted in cleaning up the Mue-Cow property. Specifically Borer claims the residence located at the Mue-Cow property "contained unsanitary conditions"; that at least nine rollaway dumpsters that were the size of 30 yards each were filled with trash from the residence; and that the residence "had an excessive mice infestation, rats[,] and significant mold in the basement."

Gary Mueller, Lorine's youngest son, testified at the hearing. Gary is also the director of Mue-Cow. Gary testified that he works for the Federal Deposit Insurance Corporation and also indicated his educational background. In his testimony, Gary stated that Mue-Cow used to be a dairy farm, but that it is currently not in operation. Gary stated that there have been a "spotty" number of financial records for Mue-Cow farms from 1994 to 2014. Gary also testified that any Mue-Cow expenses being paid were coming out of Lorine's accounts. Gary indicated that Margo, in her individual capacity, has advanced funds to Mue-Cow. In his testimony, Gary stated that his calculations of the net worth of Mue-Cow was approximately a negative $95,000 and that he had no reason to believe Mue-Cow would produce any income that could be used for Lorine's support. Gary additionally stated that the Mue-Cow property requires a "significant amount" of capital to make it operational, that the market for this type of dairy operation is weak, that there are too many repairs needed for the property, and that renting the property would not contribute any significant money. Gary further claimed that the Mue-Cow property is currently in a floodway, causing a limitation to building a new home on the property.

Margo's attorney also provided the affidavit of Rick Grubaugh, a realtor and auctioneer. Grubaugh indicated he was retained by Margo to sell the Mue-Cow and Sandpit properties. Grubaugh stated that, in his opinion, Margo received over the market prices for the properties, that it would be advantageous to sell the two properties together (with the Mue-Cow property being sold first and the Sandpit property being sold second, both on the same day); that selling them

together would result in an increased sale in the amount of $50,000; and that selling the two properties separately would be a "huge deterrent in Lorine's financial gain."

The trial court granted Margo's motion for authority to act to sell the Mue-Cow land. The trial court noted the condition of the Mue-Cow property, the financial drain of the property, the lack of resources to make repairs on the property, and that the land is a non-income producing asset. The trial court determined that it was in the best interest of the estate for both properties to be sold at the same time and that selling the two parcels at the same time would procure the highest price.

## ASSIGNMENTS OF ERROR

On appeal, the Muellers' assignments of error are that the trial court erred in determining they did not have standing to object to Margo's motion for authority to sell the Mue-Cow real estate and in allowing Margo to sell the Mue-Cow real estate.

## STANDARD OF REVIEW

An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record in the county court. *In re Conservatorship of Franke*, 292 Neb. 912, 875 N.W.2d 408 (2016). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

## ANALYSIS

*Standing*.

The Muellers argue that they should have standing to object to Margo's motion for authority to approve the sale of the Mue-Cow real estate because Margo violated the implied covenant of good faith and fair dealing based on the Agreement.

"A waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right." *Omaha Police Union Local 101 v. City of Omaha*, 292 Neb. 381, 391, 872 N.W.2d 765, 773 (2015). "To establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part." *Id.* The burden of establishing the waiver occurred is on the party asserting the waiver defense. *Id.*

Standing concerns a court's power and jurisdiction to address the presented issues in order to identify disputes which are appropriately resolved through the judicial process. *Frenchman-Cambridge Irr. Dist. v. Dept. of Nat. Res.,* 281 Neb. 992, 801 N.W.2d 253 (2011); *In re Guardianship of Herrick*, 21 Neb. App. 971, 846 N.W.2d 301 (2014). The standing doctrine provides that a court may decline to determine a legal claim's merits because the party advancing the claim is not properly situated to be entitled to its judicial determination. *Id.* Standing requires a litigant to have a personal stake in the controversy's outcome to warrant invocation of a court's jurisdiction and to justify the exercise of the court's remedial powers on the litigant's behalf. *Id.* See, also, *In re Application A-18503,* 286 Neb. 611, 838 N.W.2d 242 (2013). Simply stated, the focus of standing is on the party, not the claim itself. *Id.*

In this instance, we agree with the trial court's determination that the Muellers did not have standing. The Muellers voluntarily and intentionally relinquished and abandoned their legal rights by entering into the Agreement with Margo and Mue-Cow. The Agreement explicitly provided that the Muellers would waive their rights as interested parties to file any further motions, objections, and filings and any further standing in the guardianship and conservatorship proceeding. By waiving their rights as interested parties and standing in the guardianship and conservatorship proceeding, the Muellers were not properly situated to be entitled to the trial's courts determination regarding the guardianship and no longer had a personal stake in the guardianship's outcome. Therefore, we determine the Muellers' contention is without merit.

*Sale of Mue-Cow Property*.

The Muellers also claim that Margo should not have been permitted to sell the Mue-Cow property because she has sufficient assets to provide for Lorine.

Based on our holding above, we need not address whether the trial court should not have permitted Margo to sell the Mue-Cow property. See *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

CONCLUSION

We find that the decision of the county court conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. As a result, the decision of the county court is affirmed.

AFFIRMED.